IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. DIANE PERLMAN,                  :     CIVIL ACTION
                                    :     NO. 09-4215
          Plaintiff,                :
                                    :
     v.                             :
                                    :
UNIVERSAL RESTORATION SYSTEMS,      :
INC., et al.,                       :
                                    :
          Defendants.               :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        September 19, 2013


     Diane Perlman (Plaintiff) commenced this diversity

action[1] against Universal Restoration Systems, Inc., 1 Source

Safety & Health, Inc. (1 Source ), INX Technology Corporation of

Pennsylvania (INX), Great Northern Insurance Company (Great

Northern) d/b/a Chubb Group of Insurance Companies (Chubb), and

John Little[2] for damages and other costs in an amount greater

than $100,000 related to Plaintiff's breach of contract,

_____

[1]      Plaintiff is an individual residing in the District of
Columbia. First Am. Compl. ¶ 7, ECF No. 32. The only remaining
defendant, 1 Source Safety & Health, Inc., is a Pennsylvania
corporation with its principal place of business in Exton, PA.
Id. ¶ 10.

[2]      John Little is an employee of Chubb & Son, which is a
division of Federal Insurance Company, the insurance manager of
Great Northern. Little was the claims adjustor for Plaintiff's
Chubb insurance claim.

negligence, and insurance bad-faith claims. Four of the five defendants are no longer in the case, leaving only 1 Source.[3] This memorandum pertains only to Plaintiff's negligence and breach-of-contract claims against 1 Source. 1 Source filed a motion for summary judgment on both claims, to which Plaintiff responded.[4] After the Court heard oral argument on 1 Source's motion and all related filings, including argument on whether one of Plaintiff's expert witnesses, Dr. Jack Thrasher, meets the threshold requirements under Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the matter is now ripe for review. For the reasons that follow, the Court will grant 1 Source's motion.

## I.   BACKGROUND

Plaintiff alleges that mold contamination was first discovered on her Narberth, Pennsylvania property (the Narberth

---

[3]    Plaintiff removed Little as a defendant in her Amended Complaint. First Am. Compl. § 1, 4. The Court dismissed INX from the case pursuant to the parties' request. Order, Jan. 26, 2012, ECF No. 121. Finally, Great Northern d/b/a Chubb and Universal each settled with Plaintiff and were, accordingly, dismissed from the case. Order, May 24, 2012, ECF No. 123; Order, Nov. 20, 2012, ECF No. 151.

[4]    1 Source subsequently moved for leave to file a reply in support of summary judgment. Def.'s Mot. Leave to File 1, ECF No. 148. Plaintiff responded in opposition. Pl.'s Resp. in Opp'n to Def.'s Mot. Leave to File 1, ECF No. 149. Plaintiff also filed a sur-reply that includes arguments on why her experts meet the Daubert requirements after receiving leave of Court. Pl.'s Sur-Reply, ECF No. 155.

home) in August 2001. Pl.'s Resp. Ex. A, Perlman Dep., at 81:17-21, Jun. 14, 2011, ECF No. 142-1. Both her attic and basement were affected at this time. Id. at 82:9-18. She filed a claim with her property insurer, Chubb, and Chubb had Universal perform mold remediation work on the Narberth home in September 2001. Def.'s Mot. Summ. J. Ex. I, Pl.'s Resp. to Interrogs. No. 8, ECF No. 140-2. Plaintiff claims Universal failed to adequately remove the mold. First Am. Comp. ¶ 29. She further claims that, from 2001 to 2003, she experienced allergies, shortness of breath, fatigue, joint stiffness, concentration problems, reading and writing difficulties, vertigo, inflammation, head sweats, weight gain, and hypothyroidism as a result of the mold exposure. Pl.'s Resp. to Interrogs. No. 9.

Plaintiff rediscovered mold in the Narberth home in June 2003. Id. No. 8. On June 23, 2003, Jake Yasgur of Mold Detective inspected the property and collected mold samples. Id. No. 2. The samples were processed by NAL East Mold Testing, which confirmed the presence of toxic mold and elevated levels of Stachybotrys. Notice of Removal Ex. A, 2003 NAL East Report, ECF No. 1. After Plaintiff informed Chubb of the NAL East Report indicating mold contamination, Little referred her to speak with 1 Source's vice president, Harry Neil, a Certified Industrial Hygienist (CIH). Perlman Dep. 130: 14-15; Pl.'s Resp. Ex. P, 1 Source Visual Inspection, Moisture Testing and Sampling Report

3

1, 6, ECF No. 146-16 [hereinafter 1 Source Report]. 1 Source
submitted an inspection proposal to Plaintiff on June 18, 2003,
Def.'s Mot. Summ. J. Ex. B, Proposal, ECF No. 146-2, but Neill
stated that he was unable to begin the inspection until August
2003 due to vacation plans and other work projects, Def,'s Mot.
Summ. J. Ex. C, Neill Dep., at 41:10-14, Jan. 31, 2012, ECF No.
146-3. Consequently, Plaintiff chose not to hire 1 Source to
perform the inspection. Perlman Dep. 130:14-132:11. However,
Chubb requested that 1 Source investigate, on its behalf, an
area in the attic of the Narberth home and throughout the house
for moisture sources after Plaintiff submitted a claim to Chubb
in July 2003. 1 Source Report 1.

        1 Source inspected the Narberth home on August 4,
2003, and September 2, 2003. Id. The company reported that it
performed moisture-meter testing using a Tramex "Moisture
Encounter" meter and a Delmhorst Moisture Probe and collected
air samples using a pbi surface-air-system. Id. at 1-2. The air
samples were processed by P&K Microbiology Services, Inc. Id. at
2. 1 Source's report to Chubb also indicated the presence of
elevated moisture levels in the attic sitting room and a
bathroom, damp basement walls suggesting fungal amplification,
and staining in the master bedroom and closet suggesting prior
moisture damage. Id. at 3-5. Accordingly, 1 Source recommended
that a structural engineer perform further inspection, that

Plaintiff take cleaning measures including HEPA air washing and vacuuming, and that she seek medical attention regarding her health concerns. Id. at 5-6. 1 Source submitted invoices to Chubb on September 9, 2003, for moisture and mold investigation totaling $2,552.35 and on October 7, 2003, for moisture and mold investigation totaling $3,389.28. Pl.'s Resp. Ex. S, 1 Source Invoices, ECF No. 146-19. INX subsequently completed mold remediation work at the Narberth home in 2003. First Am. Compl. ¶ 59.

Plaintiff temporarily moved to Washington, D.C. on September 8, 2003. Pl.'s Resp. to Interrogs. No. 2. At the time, she moved her furniture, clothing, and books from the Pennsylvania residence to D.C. Id. Due to this transfer of belongings, she claims that her temporary D.C. residence became contaminated with mold from the Narberth Home. Id.

Thereafter, Plaintiff permanently moved to D.C. on July 26, 2004, and she purchased a residence there on February 15, 2005 (the permanent D.C. home). First Am. Comp. ¶¶ 66-67. Meanwhile, she was forced to seal her contaminated property in plastic boxes and place them in long-term storage. Id. ¶ 68. Plaintiff contends that she experienced re-exposure to toxic mold in the permanent D.C. home when her neighbor's apartment flooded and caused water damage to the residence. Id. ¶¶ 87-88. She alleges that her original symptoms caused by mold

exposure in the Narberth home were aggravated by and caused a
hypersensitivity to mold exposure in the permanent D.C. home.
Id. ¶ 86-87, 124.

Overall, she alleges experiencing serious mycotoxin
exposure symptoms as a result of: (1) 1 Source's participation
in the mold remediation of the Narberth home (2); further
exposure to mold found on furniture and other belongings that
she moved from the Narberth home to her temporary D.C.
residence; and (3) aggravated symptoms based on re-exposure to
mold in the permanent D.C. home. Id. ¶ 162.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). "A motion for summary judgment will not be defeated by
'the mere existence' of some disputed facts, but will be denied
when there is a genuine issue of material fact." Am. Eagle
Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir.
2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247-48 (1986)). A fact is "material" if proof of its existence
or nonexistence might affect the outcome of the litigation, and
a dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

Federal courts sitting in diversity generally apply the substantive choice-of-law rules of the forum state, which is Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005). Here, the parties rely on Pennsylvania law in their written submissions to the Court, which indicates their agreement that Pennsylvania law governs the interpretation of the instant insurance contract. Therefore, to the extent the law of a state other than Pennsylvania would control, the parties waive the issue and Pennsylvania law will apply. See Advanced Med., Inc. v. Arden Med. Sys., Inc., 955 F.2d 188, 202 (3d Cir.

1992); <u>Mellon Bank v. Aetna Bus. Credit, Inc.</u>, 619 F.2d 1001, 1005 n.1 (3d Cir. 1980).

## III. DISCUSSION

Plaintiff asserts that 1 Source was negligent in its role during the 2003 mold remediation of the Narberth home and thus violated Pennsylvania law. She also argues that 1 Source is liable for breach of contract on a third-party beneficiary theory. 1 Source moves for summary judgment, arguing that Plaintiff has not produced sufficient evidence to survive summary judgment as to either of these causes of action. For the reasons that follow, the Court will grant 1 Source's Motion for Summary Judgment.

### A.   Negligence Claim

Plaintiff first asserts that 1 Source was negligent in delaying and performing mold-remediation work in Plaintiff's home in 2003. First Am. Compl. ¶¶ 122-123. 1 Source moves for summary judgment, arguing that 1 Source did not perform mold remediation work in 2003 but merely conducted inspections and air sampling at Chubb's request. Def.'s Mot. Summ. J. 8. Therefore, 1 Source argues that Plaintiff has failed to produce any evidence demonstrating that 1 Source's "remediation" actions caused Plaintiff's injuries. <u>Id.</u> at 11.

Plaintiff responds in opposition, requesting that her First Amended Complaint be amended yet again to allege that 1 Source was negligent in its role as a CIH- and indoor-air-quality professional. Pl.'s Resp. 32. Pursuant to this new theory of negligence, Plaintiff argues that 1 Source owed a duty to Plaintiff to adequately inspect and recommend remediation procedures for Plaintiff's home. Id. at 33. to argue that 1 Source breached this duty, and summary judgment will therefore be denied. Id. at 34. Accordingly, the Court will first determine whether Plaintiff is permitted to further amend the First Amended Complaint. Then, the Court will determine whether her negligence claim survives summary judgment.

### 1.   Leave to Amend

To determine whether Plaintiff's theory of negligence should be amended to conform to the evidence as requested, the Court must analyze whether allowing an amendment of the Complaint is proper at this stage of the proceeding.[5] Amendments

---

[5]     The Court need not consider whether any statute-of-limitations-issues render Plaintiff's proposed amendment futile or whether the new claim relates back to the date of the original Complaint's filing. See Fed. R. Civ. P. 15(c). "There is no allowance in Rule 15(c) for inquiry into a party's delay in moving for leave to amend. Such equitable considerations are relevant to whether leave to amend should be granted under Rule 15(a) . . . but do not relate to any of the enumerated conditions of Rule 15(c)." Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006) (citations omitted). Accordingly, because the Court denies the request for leave to amend based solely on Rule

to pleadings are governed by Rules 15 and 16 of the Federal
Rules of Civil Procedure. Rule 15 permits parties to amend their
pleadings only once as a matter of course, within 21 days after
service of the initial complaint or the filing of a responsive
pleading or motion. Fed. R. Civ. Pro. R. 15(a)(1). All further
amendments require the leave of the court, which it should
"freely give . . . when justice so requires." Id. R. 15(a)(2).
If, however, a motion to amend is filed after the Court ordered
deadline for amendments has passed, the moving party must first
demonstrate good cause for the amendment. Id. R. 16(b)(4). "Good
cause" under Rule 16(b) focuses on the diligence of the party
seeking the modification of the scheduling order. See Fed. R.
Civ. P. 16, Advisory Committee Note (1983) ("[T]he court may
modify the schedule on a showing of good cause if it cannot
reasonably be met despite the diligence of the party seeking the
extension.").

Once good cause is shown, the Court may determine
whether justice requires the amendment under Rule 15. A district
court has discretion to deny such a request, "if it is apparent
from the record that (1) the moving party has demonstrated undue
delay, bad faith, or dilatory motives, (2) the amendment would
be futile, or (3) the amendment would prejudice the other

---

15(a), it does not reach any statute-of-limitations or relation-
back issues. See id. at 203-04.

party." <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 116 (3d Cir. 2003). "In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Federal Rule of Civil Procedure 12(b)(6)." <u>Travelers Indem. Co. v. Dammann & Co.</u>, 594 F.3d 238, 243 (3d Cir. 2010) (internal citations and quotations omitted).

The potential prejudice to 1 Source bars any amendment and prevents the claim from relating back to the filing of the original Complaint. "[A] district court may deny leave to amend a pleading where the moving party has: (1) failed to utilize previous opportunities to amend; and (2) has not offered any explanation for this failure." <u>AMS Const. Co. v. Reliance Ins. Co.</u>, No. 04-CV-02097, 2006 WL 1967336, at *2 (E.D. Pa. July 12, 2006); <u>see also</u> <u>CMR D.N. Corp. v. City of Phila.</u>, 703 F.3d 612, 629, (3d Cir. 2013) ("[A] significant, unjustified, or "undue" delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend.").

Here, all discovery occurred under the theories advanced by Plaintiff in the original Complaint and First Amended Complaint, and Plaintiff waited until after 1 Source filed a motion for summary judgment to suggest an alternative theory of liability in this case. Moreover, she had moved to amend the Complaint twice previously, and both times she failed

to include this new theory of negligence. Furthermore, she offers no explanation or justification in her Response for why this theory was not included in either previous attempt to amend the First Amended Complaint. 1 Source would therefore be prejudiced as it was unable to sufficiently prepare a defense against this theory during discovery. Under the circumstances, the Court declines to grant her third request to amend the Complaint.

2.   Negligence Claim Merits

Having denied Plaintiff's third attempt to amend the Complaint, the Court must now determine whether her claim can survive 1 Source's Motion for Summary Judgment based on its original theory of negligence—that 1 Source was "negligent in the mold remediation work they performed on Dr. Perlman's Narberth Property and they failed to remove all of the mold." First Am. Compl. ¶ 123. But Plaintiff admits that 1 Source is not a mold remediation company and performed no remediation on her home. Pl.'s Resp. to Interrogs. No. 5.

The Court must then consider whether the phrase "mold remediation work" should be interpreted narrowly, as argued by 1 Source, to reference only mold remediation or broadly, as argued by Plaintiff, to include inspection and development of any remediation plan taking place before actual remediation. The

Court needs not determine which of the two definitions applies under Pennsylvania law because under either, Plaintiff's claim fails.

Under the narrow view of interpretation, 1 Source's actions clearly fall outside the scope of "mold remediation work" because 1 Source did not perform any remediation work. Under the broad view of interpretation, which would include inspection and preparation of mold remediation recommendations, Plaintiff's evidence is insufficient to defeat summary judgment.

Under Pennsylvania law, a plaintiff bringing a claim of negligence must demonstrate: (1) a duty or obligation recognized by law; (2) the defendant's breach of that duty; and (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damages suffered by the plaintiff. Merlini ex rel. Merlini v. Gallitzin Water Auth., 980 A.2d 502, 506 (Pa. 2009) (citing Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)).[6]

---

[6]     Additionally, Plaintiff's negligence claim appears to be barred by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, which requires that an action based upon professional negligence be supported by a certificate of merit. It appears this claim falls within the province of the rule in that Plaintiff relies exclusively on ethical guidelines and expert testimony in her attempt to demonstrate proof of negligence, and a certificate of merit must support such a cause of action. See Zokaites Contracting Inc. v. Trant Corp., 968 A.2d 1282, 1287 (Pa. Super. Ct. 2009). None was filed in this case. But because 1 Source failed to raise the issue at the motion-to-dismiss

Plaintiff argues that the American Board of Industrial Hygiene (ABIH) Canons of Ethical Conduct, American Industrial Hygiene Association (AIHA) guidelines, Institute of Inspection Cleaning and Restoration Certification (IICRC) guidelines, and the testimony of her toxicology expert, Dr. Jack Thrasher, establish 1 Source's duty to Plaintiff and its breach of that duty. She also relies on Dr. Thrasher's testimony to demonstrate causation between the breach of duty and Plaintiff's harm. Pl.'s Resp. 34.[7]

First, regarding the AIHA and IICRC guidelines, Plaintiff has not pointed to any language in the guidelines that clearly casts 1 Source's conduct into doubt. Plaintiff particularly emphasizes AIHA guidance that states that "[t]he confirmed presence of Stachybotrys chartarum requires that the space if occupied be inspected as quickly as possible upon receipt of the data and consideration be given to children, immune compromised individuals and mold sensitive asthmatics." Pl.'s Resp. Ex. R, Recognition, AIHA Manual on Recognition, Evaluation, and Control of Indoor Mold 8, ECF No. 146-18.

---

stage, the Court will assume that Plaintiff proceeds on a theory of ordinary negligence.

[7]     Plaintiff also relies on the testimony of neuropsychologist Dr. Wayne Gordon, although his opinion that Plaintiff's ailments were "the result of" mold exposure does nothing to connect 1 Source to her alleged harm. See Pl.'s Resp. Ex. N, Gordon Dep. 38:, Feb. 27, 2012, ECF No. 146-14.

Also, both the AIHA and IICRC guidelines are advisory
and do not impose a legal duty on 1 Source—although they may
inform any such duty, they are not binding or create a duty. Cf.
R.W. v. Manzek, 888 A.2d 740, 746-47 (Pa. 2005) ("[T]he concept
of duty amounts to no more than the sum total of those
considerations of policy which led the law to say that the
particular plaintiff is entitled to protection from the harm
suffered.") (internal quotation marks omitted) (citing Althaus
v. Cohen, 756 A.2d 1166, 1168-69 (Pa. 2000)). This is
particularly true where ordinary negligence is at issue, as is
the case here, see supra n.7, which does not include a
heightened duty under professional negligence. See Merlini ex
rel. Merlini v. Gallitzin, 934 A.2d 100, 103-04 (Pa. Super. Ct.
2007).

In any event, Plaintiff has not produced sufficient
evidence to suggest that 1 Source did not perform according to
their precepts. Regarding the ABIH ethical code, Plaintiff
highlights the statements that:

> Industrial Hygienists shall: (1) Practice their
> profession following recognized scientific principles
> with the realization that the lives, health and well-
> being of people may depend upon their professional
> judgment and that they are obligated to protect the
> health and well-being of people. (2) Counsel affected
> parties factually regarding potential health risks and
> precautions necessary to avoid adverse health effects.

Pl.'s Resp. Ex. M, ABIH Code of Ethics 1, ECF No. 146-13. Even
in light of this excerpt, however, Plaintiff has again failed to
produce sufficient evidence to support a reasonable jury's
finding that 1 Source did not meet these ethical obligations.
For instance, 1 Source's report to Chubb of its initial testing
results specifically states that it recommended that Plaintiff
seek medical attention regarding her health concerns. 1 Source
Report 5-6. This advice is sufficient to satisfy any obligation
to Plaintiff as to health risks.

Second, regarding Dr. Thrasher, Plaintiff relies
solely on his testimony to show causation, as well as to further
clarify the alleged duty owed by 1 Source. Specifically,
Plaintiff claims that "1 Source did not 'tell Dr. Perlman to get
out of the house and stay out of the house,' as a result of
which she stayed in the home and 'continued to exacerbate
preexisting conditions and create additional health problems.'"
Pl.'s Sur-Reply 12 (quoting Thrasher Dep. 184:4-185:15).
Furthermore, Dr. Thrasher stated in his expert report that 1
Source's failure to mention the existence of Stachybotrys
chartarum was a "serious oversight," the "investigation did not
quantify the extent of indoor contamination of mold species," 1
Source's role as a CIH was to recommend remediation plans and
conduct additional testing after remediation, and that
"[o]versight of these natures is negligence regarding the

16

responsibilities of a CIH company." Pl.'s Resp. J. Ex. J, Thrasher Report 3, 6, ECF No. 146-10. Dr. Thrasher states that his conclusions were based on his review of the case docket, the NAL East Report, Reports by 1 Source, photographs, and additional reports and materials. Id.; Def.'s Reply Ex. O, Thrasher Dep. 83:24-84:22, Sept. 23, 2012, ECF No. 148-2.

1 Source challenges the admissibility of Dr. Thrasher's reports in its Reply, arguing that his opinions are unreliable and would not assist the trier of fact, that causation is not properly addressed, and that Dr. Thrasher lacks proper qualifications. Def.'s Reply 4-6, 12-14. Plaintiff argues that 1 Source did not properly file a motion in limine pursuant to Rule 702 or address this argument in its Motion for Summary Judgment. Pl.'s Resp. in Opp'n to Def.'s Reply 1-2.[8]

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., the Supreme Court held that the Federal Rules of Evidence give trial judges the authority to determine the threshold of reliability and relevance of expert testimony. 509 U.S. 579 (1993). Courts have interpreted this holding to "instruct district courts to conduct a preliminary assessment of the

---

[8]     While 1 Source may have failed to initially raise an objection to Plaintiff's experts' admissibility, it is not necessary to consider this procedural issue because the Court subsequently heard argument on the reliability of Dr. Thrasher's report and further provided an opportunity to Plaintiff to file a sur-reply on the matter, which she has done.

reliability of expert testimony, even in the absence of an objection [to the expert's reliability]." Hoult v. Hoult, 57 F.3d 1, 4-5 (1st Cir. 1995). Furthermore, "where the opposing party does not sufficiently call these issues into question, [the Court of Appeals] will not find plain error merely because the District Court did not conduct an extensive Daubert analysis on the record." Id. Therefore, the Court will conduct a preliminary analysis and apply the Daubert factors to determine the admissibility of Plaintiff's toxicology expert.

In analyzing the admissibility of expert testimony, Rule 702 of the Federal Rules of Evidence provides three requirements: (1) The testimony must be based on sufficient facts or data (qualification); (2) the testimony is the product of reliable principles and methods (reliability); and (3) the witness has applied the principles and methods reliably to the facts of the case (fit). Fed. R. Evid. 702; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1995).

To determine whether the expert testimony is reliable and admissible, the "the court must inquire into whether (1) the theory or technique employed by the expert is scientific knowledge that will assist the trier of fact, (2) the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and the existence and maintenance of standards for controlling the technique's

18

operation, and (4) the general acceptance of the theory or technique." ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622, 690, amended, 268 F. Supp. 2d 448 (E.D. Pa. 2003) (Robreno, J.); see also Paoli R.R. Yard PCB Litig., 35 F.3d at 742.

In this case, Dr. Thrasher's qualifications as an expert seem adequate, as he represents that he is a medical/legal consultant in environmental toxicology and immunotoxicolgy and is a toxicologist and cell biologist. Pl.'s Sur-Reply Ex. A, Thrasher C.V., at 1-2; see also Thrasher Dep. 127:24-25.

Dr. Thrasher admits that he has reviewed several reports, including the sampling report prepared by 1 Source, depositions, and "a whole bunch of other materials." Thrasher Dep. 83:24-84:22. He did not perform any independent research. But although Dr. Thrasher may be permitted to rely on other reports related to the case and may not be required to conduct his own scientific tests,[9] the opinions he reaches in his report are conclusory and offer no true explanations, as he even goes as far to say 1 Source's conduct "is negligence." Thrasher Report 6. In other words, Dr. Thrasher "has unjustifiably

---

[9]      The Court does not decide whether Dr. Thrasher's failure to perform any independent studies or tests precludes his testimony from consideration at this stage of the proceedings.

extrapolated from an accepted premise to an unfounded conclusion." In re Unisys Sav. Plan Litig., 173 F.3d 145, 166 n.10 (3d Cir. 1999) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 144 (1997)).

Furthermore, Plaintiff places great emphasis on a single sentence in Dr. Thrasher's report: that 1 Source did not 'tell Dr. Perlman to get out of the house and stay out of the house,' as a result of which she stayed in the home and 'continued to exacerbate preexisting conditions and create additional health problems.'" Id. 184:4-185:15. But other than this singular observation, based only on "subjective belief or unsupported speculation," Paoli, 35 F.3d at 742, he makes no connection between the alleged cause and result. What is more, 1 Source arguably complied with Dr. Thrasher's stringent, unsupported duty to warn when the company included in its report an admonition to Plaintiff to see a doctor. 1 Source Report 5-6. Because Dr. Thrasher's report relies on unreliable methodology for establishing causation, it fails a Daubert analysis and is thus inadmissible.

Without Dr. Thrasher's report, Plaintiff has failed to produce sufficient evidence to demonstrate that 1 Source's actions were causally related to her harm. Therefore, it is not necessary to consider whether Plaintiff's evidence has

sufficiently addressed general and specific causation, as 1 Source argues. Plaintiff's negligence ultimately fails.

    B.    Breach-of-Contract Claim

        Plaintiff also alleges under a third-party beneficiary theory that 1 Source committed a breach of contract. Pl.'s Resp. 36.[10] 1 Source counters that a third-party beneficiary theory is inapplicable because Plaintiff has not produced evidence that a contract existed between 1 Source and Chubb or that these companies intended to benefit Plaintiff. Def.'s Mot. Summ. J. 16. The Court need not determine whether Plaintiff qualifies as a third-party beneficiary because she improperly recasts her negligence claim as a breach-of-contract claim.[11]

---

[10]     Notably, Plaintiff does not specifically mention this theory in her First Amended Complaint; she only states a general claim for breach of contract. However, Plaintiff sought to include this amendment, among several other changes, in a Second Amended Complaint, which the Court denied. Order, ECF No. 63.

[11]     Even under a third-party beneficiary theory, Plaintiff's breach-of-contract claim fails. Under Pennsylvania law, there are two tests to determine third-party beneficiary status. The first test requires an intention to benefit a third party expressed in an actual contract. Sound of Mkt. St., Inc. v. Cont'l Bank Int'l, 819 F.2d 384, 389 (3d Cir. 1987) (citing B. Bornstein & Son, Inc. v. R.H. Macy & Co., 420 A.2d 477, 482 (Pa. Super. Ct. 1980); Spires v. Hanover Fire Ins. Co., 70 A.2d 828, 830 (Pa. 1950)).

    The second test provides:

    First, the circumstances must be so compelling that recognition of the beneficiary's right is appropriate

The gist-of-the-action doctrine precludes Plaintiff
from recasting ordinary breach-of-contract claims into tort
claims. Erie Ins. Exchange v. Abbott Furnace Co., 972 A.2d 1232,
1238 (Pa. Super. Ct. 2009); Reardon v. Allegheny College, 926
A.2d 477, 486 (Pa. Super. Ct. 2007). In this case, Plaintiff's
breach-of-contract claim fails under a "reverse" gist-of-the-

> to effectuate the intention of the parties. Second,
> (1) the performance satisfies an obligation of the
> promisee to pay money to the beneficiary or (2) the
> circumstances indicate that the promisee intends to
> give the beneficiary the benefit of the promised
> performance.

Two Rivers Terminal, L.P. v. Chevron USA, Inc., 96 F. Supp. 2d
432, 450 (M.D. Pa. 2000) (citing Guy v. Liederbach, 459 A.2d 744
(Pa. 1983)). Furthermore, the Pennsylvania Supreme Court adopted
§ 302 of the Restatement (Second) of Contracts, which states in
relevant part that "[a]n incidental beneficiary is a beneficiary
who is not an intended beneficiary." Sovereign Bank v. BJ's
Wholesale Club, Inc., 533 F.3d 162, 168 (3d Cir. 2008) (citing
Scarpitti v. Weborg, 609 A.2d 147, 149 (Pa. 1992)).

In this case, Plaintiff fails to satisfy the first test
because neither party produced evidence of a contract between 1
Source and Chubb. Accordingly, she must meet the requirements of
the second test for her breach-of-contract claim to survive.

In attempting to do so, Plaintiff relies on the
proposition she espoused at the motion-to-dismiss stage of the
proceedings—that because she would benefit from inspection and
other work performed by 1 Source at her home, 1 Source should
have known at the time of contracting with Chubb that Plaintiff
would receive the benefit of its performance. Pl.'s Resp. 39.
Since that time, Plaintiff has pointed to no additional
evidence, much less compelling evidence as required under Two
Rivers, to show that 1 Source intended to give Plaintiff the
benefit of its performance. This assertion alone, in the absence
of supporting evidence, is insufficient to meet the requirements
set forth in Two Rivers Terminal and at most shows that
Plaintiff is an incidental beneficiary. Therefore, Plaintiff
cannot qualify as a third-party beneficiary.

action theory. A valid contract claim must allege more than just
a violation of a pre-existing legal duty. Hoyer v. Frazee, 470
A.2d 990, 992-93 (Pa. Super. Ct. 1984), abrogated on other
grounds by Bailey v. Tucker, 621 A.2d 108 (Pa. 1993)); see also
I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants, Civil
Action No. 03-4932, 2008 WL 269467, at *9 n.5 (E.D. Pa. Jan. 30,
2008) (quoting Official Comm. of Unsecured Creditors of Correll
Streel ex. rel. Correll Steel v. Fishbein & Co., P.C., CIV. A.
No. 91-4919, 1992 WL 196768, at *5 (E.D. Pa. Aug. 10, 1992))
("Failure to perform a service with the requisite level of
professional care typically constitutes a claim of negligence,
not breach of contract."). Furthermore, a duty to act according
to professional guidelines or principles is separate and
independent of any duty imposed by contract. See Matlack
Leasing, L.L.C. v. Morison Cogen, L.L.P., Civil Action No. 09-
1570, 2010 WL 114883, at *6 (E.D. Pa. Jan. 13, 2010) (citing
Robert Wooler Co. v. Fidelity Bank, 479 A.2d 1027, 1031 (Pa.
Super. Ct. 1984)).

    In Plaintiff's Response, she does not point to any
contractual duty between 1 Source and Chubb or 1 Source and
Plaintiff.[12] She only argues that 1 Source failed to act in

---

[12]     Granted, there is no contract upon which to rely, but
Plaintiff is still obligated to raise an issue as to whether any
agreement between Chubb and 1 Source specifically instructed 1
Source to perform a task that it failed to perform. See Matlack,

accordance with the ABIH Canon of Ethics, the AIHA and IIRC guidelines, and Dr. Thrasher's proposed, stringent duty to warn. Indeed, in the breach-of-contract section of the Response, she points to no contractual duty whatsoever, and merely speculates that "[clearly], the purpose of any agreement between Chubb and 1 Source was to inspect the Perlman residence to determine the sources of moisture intrusion and the extent of the mold damage for which remediation was required." Pl.'s Resp. 29. In support of this argument, she cites not to any agreement between Chubb and 1 Source, but to the report at issue submitted by 1 Source. Id. Because Plaintiff's breach-of-contract argument necessarily relies on her negligence argument, it must fail as a matter of law.[13]

---

2010 WL 114883, at *6 (dismissing a breach-of-contract claim proceeding under a third-party beneficiary theory because plaintiffs failed to distinguish it from their negligence claim); Scarpitti, 609 A.2d at 151 (finding plaintiffs adequately pleaded a breach-of-contract cause of action under a third-party beneficiary theory despite the lack of a contract).

[13]     The Court recognizes that defects in claims stemming from the gist-of-the-action doctrine and its variant are usually disposed of at the motion-to-dismiss stage. See, e.g., Matlack, 2010 WL 114883, at *1; Fishbein, 1992 WL 196768, at *1. Here, the Court denied several motions to dismiss based in part on the gist-of-the-action doctrine and provided Plaintiff the opportunity to establish distinct evidentiary foundations for her negligence and breach-of-contract claims through discovery. See Hr'g Trans. 38:18-40:6, Mar. 11, 2010, ECF No. 65; Order, Mar. 23, 2010, ECF No. 63. Judging by her Response, in which she relies on the same underlying duty for both claims, she has failed to take advantage of the opportunity.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will grant 1 Source's Motion for Summary Judgment.